UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DeANGELO DOVE,

        Plaintiff,

  v.                                  CAUSE NO. 3:21-CV-449-DRL-MGG

RON NEAL *et al.*,

        Defendants.

OPINION AND ORDER

DeAngelo Dove, a prisoner without a lawyer, filed an amended complaint (ECF 14) after this court determined his original complaint did not state any plausible claims. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

The court applies the same standard as when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (internal quotation marks and citation omitted).

Mr. Dove alleges Sergeant Charles Wilson subjected him to a shakedown of his cell in D-cell house—a disciplinary segregation unit—on April 29, 2021, at the Indiana State Prison at the direction of Warden Ron Neal and Major Douglas Wardlow. According to Mr. Dove, Sgt. Wilson's e-squad team approached his cell with their guns drawn and ordered him to strip naked. He was told to "lift my balls, turn around, bend over, spread my butt cheeks, squat and cough." ECF 14 at 2. Afterwards, they zip-tied his hands together, extracted him from the cell, and moved him to a new cell location, also in D-cell house, that was "filthy" and "extremely unsanitary" due to the "removal of light fixtures and desk which caused dust, dirt, debr[is] along with dead mice, roaches, and mice poop." *Id*. Mr. Dove asked Sgt. Wilson for a "mop, broom, dust pan, germ away, neutralizer, citrus plus, [and] mouse trap" but was denied these items, allegedly per "direct orders" from Warden Neal and Major Douglas. *Id*.

When he asked Sgt. Wilson for his personal property from his old cell—including hygiene items, legal mail, clothing, and religious books[1]—he was informed that Sgt. Wilson had received direct orders from Warden Neal and Major Wardlow that he was not allowed to have these items in his new cell. All he was "allowed to have was [his] mattress and a sheet including the clothes on [his] back." *Id*. Mr. Dove was not permitted

---

[1] Specifically, Mr. Dove alleges he was deprived of his "soap, shampoo, toothbrush, deodorant, toothpaste, hair grease, brush, wave cap, spoon, cup, pen, paper, shoes, pants, shirts, boxers, socks, coat, blankets, sheets, headphones, tablet, bible, daily bread devotions, cross, [and] legal mail." ECF 14 at 2.

to shower for seven days, and he has not yet received his "legal mail" back. *Id.* at 4. He also claims he was not allowed to have his "bible, [his] daily bread devotions, and cross" in his cell, so he could not practice his religion for an unspecified period of time. *Id.* He claims these actions violated his constitutional rights as well as Indiana Department of Correction policy. He sues Warden Neal, Assistant Warden Wardlow, and Sgt. Wilson for monetary damages and injunctive relief.

As an initial matter, Mr. Dove alleges the defendants' actions violated Indiana Department of Correction policy. He attaches sixty-nine pages of the IDOC policy and administrative procedure manual to his complaint. However, as noted in the court's prior order, policy violations alone do not amount to constitutional violations. *See Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019) ("[A] constitutional suit is not a way to enforce state law through the back door."); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"); *Conner v. Hoem*, 768 Fed. Appx. 560, 564 (7th Cir. 2019) ("In any case, the Constitution does not require state actors to enforce their own policies and regulations.") (citing *Garcia v. Kankakee Cty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002)). Therefore, Mr. Dove has not stated a claim by alleging that the defendants failed to follow their own policies.

As to the search, the Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In general, determining whether a search violates the Fourth Amendment is a question of reasonableness and "requires a balancing of the need

3

for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). With regard to prisons in particular, the Supreme Court has held the Fourth Amendment's prohibition of unreasonable searches does not apply to those conducted "within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). However, an exception to that limited categorical rule has been recognized wherein "the Fourth Amendment protects (in a severely limited way) an inmate's right to bodily privacy during visual inspections, subject to reasonable intrusions that the realities of incarceration often demand." *Henry v. Hulett,* 969 F.3d 769, 779 (7th Cir. 2020). Accordingly, for prisoner claims relating to a strip or body cavity search, courts must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id*. (quoting *Bell*, 441 U.S. at 559). These Fourth Amendment rights apply to both convicted prisoners and pretrial detainees. *Id*. "When evaluating reasonableness, in the context of strip searches of prisoners as in others, courts must afford prison administrators 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Id*. at 783 (quoting *Bell*, 441 U.S. at 547).

Here, Mr. Dove has not plausibly alleged a Fourth Amendment violation regarding the search of his cell or body. With regard to the strip search specifically, he alleges he was ordered to strip naked in his cell, bend over, and cough during the shakedown. There is no indication the defendants inappropriately touched him during the process or made gratuitous or insulting comments. On the face of the complaint, the

4

scope of the search was limited to a visual inspection as opposed to a cavity search. There is no indication the strip search lasted an inordinate amount of time. Accordingly, the allegations set forth in the complaint do not plausibly suggest his "severely limited" Fourth Amendment right to bodily privacy was violated. *Cf. Henry*, 969 F.3d at 779 (Fourth Amendment violation found where female inmates were subjected to degrading strip search—including handcuffing, sexually derogatory name-calling, excessively long wait times, and unsanitary conditions related to female menstruation during the search—as part of a training exercise rather than a routine cell shakedown) ; *see also West v. Radtke*, 48 F.4th 836, 853 (7th Cir. 2022) ("It is well established that strip searches of inmates performed for security purposes are reasonable as a general matter.").[2] Thus, he has not stated any plausible claims with regard to the search.

As to the new cell where Mr. Dove was moved, the Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks

---

[2] "Importantly, the Fourth and Eighth Amendments have different roles to play with respect to bodily searches and protect different categories of constitutional rights. The Eighth Amendment safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment." *Henry*, 969 F.3d at 781; *see also Chatman v. Gossett*, 766 Fed. Appx. 362, 364 (7th Cir. 2019) ("Strip searches of prisoners violate the Eighth Amendment if their purpose is 'maliciously motivated, unrelated to institutional security, and hence totally without penological justification.'") (quoting *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (internal quotation marks and citations omitted)). There is no indication in the amended complaint that the shakedown or strip search were maliciously motivated, conducted to inflict wanton pain, or instituted as a form of punishment without penological justification. Therefore, he has not stated any plausible Eighth Amendment claims pertaining to the search either.

whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation, *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). In addition, "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gillis*, 468 F.3d at 493. On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the court of appeals has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted).

Here, the amended complaint alleges the new cell was "filthy" and "extremely unsanitary," but the only supporting details are that the removal of the light fixture and desk "caused dust, dirt, debr[is] along with dead mice, roaches and mice poop." He does not allege the cell was infested with living vermin—let alone that he was bitten or harmed by any type of pest—or that the waste and dirt extended beyond the areas where the fixture and desk were previously located. He says he was denied a variety of cleaning supplies, but the law recognizes an Eighth Amendment violation when "prisoners are

6

deprived of cleaning supplies and running water only in extreme circumstances." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (collecting cases). The complaint does not plausibly allege the condition of Mr. Dove's new cell was extraordinarily unusual in that sense. He further alleges he was denied his personal hygiene items and was provided with only a mattress, a sheet, and the clothes on his back,[3] but he doesn't indicate how long he was subjected to these conditions. He says the events he is suing about occurred on April 29, 2001, but other than a reference to a week without a shower and the fact that he doesn't have his legal mail "to this day," the complaint makes no other mention of timeframes. *See e.g. Gray*, 826 F.3d at 1005 (noting that "[a]n adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation *even if it would not be impermissible if it were only a short-term problem*") (emphasis added); *see also Harris v. Jones*, No. 20-1625, 2021 WL 4950248, at *2 (7th Cir. Oct. 25, 2021) (collecting cases and finding a "brief delay in receiving hygiene items" did not violate the Eighth Amendment); *Harris v. Fleming*, 839 F.2d 1232, 1234–36 (7th Cir. 1988) (no constitutional violation where prison officials failed to provide prisoner with toilet paper for five days and with soap, toothbrush, and toothpaste for ten days).

In general, the facts presented in the complaint regarding the condition of his new cell in the disciplinary segregation unit do not reflect a degree of uncleanliness necessary to support a constitutional violation, and Mr. Dove has still not alleged how he,

---

[3] Mr. Dove alleges the temperature outside was 45 degrees during the day and 43 degrees at night on April 29, 2021 (*see* ECF 14-1 at 47), but he does not allege the conditions *inside* the cell were exceedingly cold or that the lack of additional bedding somehow affected him.

personally, was affected by any of the cell's conditions. These allegations are insufficient to state a claim without additional details. *See generally Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (noting that a plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level") (internal quotation marks and citation omitted); *Bissessur*, 581 F.3d at 602 (claim must have "facial plausibility" to survive dismissal); *see also e.g. Smith v. Dart,* 803 F.3d 304, 312 (7th Cir. 2015) (inmate failed to state a claim when he alleged the jail was infested with mice and cockroaches but did not provide sufficient details which "left [the court] in the dark as to how extensive the infestations are and how the pests affect him"). Therefore, he has not stated any plausible claims with regard to the condition of his new cell.

Mr. Dove also complains he was not allowed to shower for seven days, but "restricting inmates to weekly showers does not violate the Eighth Amendment." *Conner v. Hoem*, 768 Fed. Appx. 560, 563–64 (7th Cir. 2019) (citing *Jaros v. Ill. Dep't of Corrs.*, 684 F.3d 667, 671 (7th Cir. 2012)). Accordingly, the claims regarding the lack of shower will be dismissed.

Mr. Dove further alleges he was prevented from having his "bible, daily bread devotions, and cross" in his new location. He claims he could not practice his religion because he could not "read the word or read my daily devotions" in his cell. Prisoners enjoy a right to exercise their religion under the free exercise clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). Nevertheless, restrictions that limit the exercise of religion are permissible if they are reasonably related to legitimate penological objectives, which include safety, security, and economic

concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *see also Gonzalez v. Litscher*, 79 Fed. Appx. 215, 217 (7th Cir. 2003) ("Although it is true that an inmate's right to freely exercise his religion does not stop entirely at the prison door, that right is not unfettered.") (citing *Tarpley v. Allen County, Ind.*, 312 F.3d 895, 898 (7th Cir. 2002).

Mr. Dove's claim centers around his inability to have his Bible and written devotions in his new cell in the disciplinary segregation unit. Inmates in segregation are permissibly subjected to far more restrictive conditions than those in general population, including being precluded from prison activities, religious services, contact visits, exercise privileges, and regulation of personal items they are allowed to have in their cell. *Lekas v. Briley*, 405 F.3d 602, 610-12 (7th Cir. 2005); *see also Payette v. Hoenisch*, 284 Fed. Appx. 348, 353 (7th Cir. 2008) (finding no constitutional violation where prison officials had removed *all* books—including the Bible—from inmate's cell because they believed the books to be a security concern). Importantly, Mr. Dove does not allege how long this deprivation occurred, nor does he allege he was prevented from practicing his religion in another manner or outside his cell. Without additional details, his allegation that he was denied his religious items on April 29, 2021, the day he was transferred to his new disciplinary segregation cell, does not state a plausible claim for relief.

Finally, Mr. Dove claims his legal materials from his original cell were taken and have not been returned to him "to this day," so he has not been able to "start his sentence modification." Prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference.

9

*Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process. *Id*. (citations omitted). Denial of access to the courts must be intentional; "simple negligence will not support a claim that an official has denied an individual of access to the courts." *Id*. at 291 n.11 (citing *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992)). To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions (by defendants acting under color of law) hindered the inmate's efforts to pursue a non-frivolous legal claim, *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998), and that actual injury (or harm) resulted, *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds* did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts); *see also* Pattern Civil Jury Instructions of the Seventh Circuit, 8.02 (2017). In other words, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*," and only if the defendants' conduct prejudices a potentially meritorious legal claim has the right been infringed. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Thus, to state a claim, a plaintiff must "spell out, in minimal detail" the connection between the denial of access to legal materials and the resulting prejudice to a potentially meritorious legal claim. *Id.*

Mr. Dove does not provide any details about the materials that were taken or why they would be necessary to file his sentence modification. Furthermore, he does not provide any details about the legal claim other than to say it is a "sentence modification"

10

related to the case for which he is currently imprisoned. It is clear he is not being prevented from filing documents with the courts in general, as he has consistently done so in this case for the past year and a half. Without more, it cannot be plausibly inferred Mr. Dove has been denied access to the courts in violation of the First Amendment.

This complaint does not state any claims for which relief can be granted. Nevertheless, Mr. Dove will be granted one additional chance, this time to file a second amended complaint, if he believes he can state a claim based on (<u>and consistent with</u>) the events described in this complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file a second amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. After he properly completes that form by addressing the issues raised in this order, he needs to send it to the court.

For these reasons, the court:

(1) GRANTS DeAngelo Dove until **January 30, 2023**, to file an amended complaint if he so chooses; and

(2) CAUTIONS DeAngelo Dove if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED.

January 3, 2023                                                                    *s/ Damon R. Leichty*
                                                                                              Judge, United States District Court