UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DeANGELO DOVE,

    Plaintiff,

    v.                                     CAUSE NO. 3:21-CV-449-DRL-MGG

RON NEAL *et al.*,

    Defendants.

## OPINION AND ORDER

DeAngelo Dove, a prisoner without a lawyer, filed a second amended complaint (ECF 36) after this court twice determined his previous complaints did not state any claims. *See* ECF 10 & ECF 21. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotationss and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

The court applies the same standard as when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quotations and citation omitted).

Mr. Dove alleges Sgt. Charles Wilson subjected him to a shakedown of his cell in D-cell House—a disciplinary segregation unit—on April 29, 2021, at the Indiana State Prison. According to Mr. Dove, he was told to remove his clothes and "lift up my balls . . . turn around and bend over and spread my butt cheeks, and then I was ordered to squat and cough." ECF 36 at 3. Afterwards, he was told to put his clothes back on, and the officers zip-tied his hands together, extracted him from the cell, and moved him to a new cell location that was "the worst cell in D-Cell house." *Id*. He wasn't allowed to bring any of his personal property with him and entered the cell with only a "t-shirt, boxers, shorts, socks, and my shower shoes." *Id*. at 4. Sgt. Wilson told him his personal items would be returned once internal affairs finished searching and logging it into the system.

Mr. Dove alleges the new cell was filthy and unsanitary. Specifically, he says there was "dust and dirt, debri[s] . . . dead roaches, dead mice plus mice poop that was scattered everywhere." *Id*. at 5. Behind a cabinet that had been removed,[1] there was a hole with two dead mice that "had been dead for a long time because of how dried up that their bodies was [sic]." *Id*. He pointed these problems out to Sgt. Wilson before he left the range and asked for some cleaning supplies including a broom, a dustpan, a mop, citrus cleaner, and some mouse traps, but Sgt. Wilson refused, saying Warden Ron Neal and

---

[1] He also mentions that a light fixture was taken down; however, later Mr. Dove indicates that he "turned on the light" (ECF 36 at 7), so it's clear that some light existed in the cell whether a single fixture had been removed or not.

2

Major Douglas Wardlow had ordered him not to provide Mr. Dove with anything until further notice. Mr. Dove asked Sgt. Wilson if he could put in a work order regarding the hole in the wall and the dead mice. Sgt. Wilson wrote down the information, but he told Mr. Dove he didn't know how long it would be before maintenance could address the issue. Later that same day, Sgt. Wilson returned to Mr. Dove's cell and gave him a mattress, sheets, a roll of tissue, and a box with his IDOC number on it. Sgt. Wilson told Mr. Dove his property was in the box and then left the range. Mr. Dove opened the box and discovered it only contained a tablet, a charger, and a pair of boots; the rest of his personal items were not there.[2] He yelled for help, but no one came. Later that evening he asked Sgt. Bass, who is not named as a defendant, for extra clothing and a blanket, but he was told that he had orders from Sgt. Wilson, Major Wardlow, and Warden Neal not to give him anything else. Mr. Dove decided to take matters into his own hands, and he cleaned the cell himself—he ripped up one of the sheets, wiped down the dirt, picked up the dead roaches and mice with tissue, and flushed everything down the toilet before shoving the rest of the sheet into the hole to plug it. Mr. Dove then attempted to sleep, but "couldn't get warm" due to the broken windows throughout D-Cell house and because he felt a roach crawling on his leg. *Id*. at 7.

      Mr. Dove didn't receive a shower or "proper clothing" for seven days. *Id*. at 8. He claims this led to a rash on his arm and butt cheeks. He also didn't receive any cleaning

---

[2] Specifically, Mr. Dove alleges his legal mail, bible, "daily bread devotion," cross, "soap, shampoo, toothbrush, deodorant, toothpaste, hair grease, brush, wave cap, spoon, cup, pen, paper, shoes, pants, shirts, boxers, socks, coat, blankets, sheets, and headphones" were not in the box. ECF 36 at 6.

supplies for two weeks. Maintenance didn't fix the hole in the wall or take any extermination measures. On January 12, 2022, the day he was released from disciplinary segregation, he received the remainder of his property and religious items back.[3] Mr. Dove believes these actions violated his constitutional rights. He has sued Warden Neal, Assistant Warden Wardlow, and Sgt. Wilson for monetary damages and injunctive relief.

As to the search by Sgt. Wilson, the Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In general, determining whether a search is violative of the Fourth Amendment is a question of reasonableness and "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). With regard to prisons in particular, the Supreme Court has held the Fourth Amendment's prohibition of unreasonable searches does not apply to those conducted "within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). However, an exception to that limited categorical rule has been recognized wherein "the Fourth Amendment protects (in a severely limited way) an inmate's right to bodily privacy during visual inspections, subject to reasonable intrusions that the realities of incarceration often demand." *Henry v. Hulett,* 969 F.3d 769, 779 (7th Cir. 2020). Accordingly, for prisoner claims relating to a strip or body cavity search, courts must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in

---

[3] He says he still has not received his legal paperwork.

4

which it is conducted." *Id*. (quoting *Bell*, 441 U.S. at 559). These Fourth Amendment rights apply to both convicted prisoners and pretrial detainees. *Id*. "When evaluating reasonableness, in the context of strip searches of prisoners as in others, courts must afford prison administrators 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Id*. at 783 (quoting *Bell*, 441 U.S. at 547).

Here, Mr. Dove has not stated a Fourth Amendment violation regarding the search of his cell or body. With regard to the strip search specifically, he alleges he was ordered to strip naked, bend over, and cough during the shakedown. There is no indication the defendants inappropriately touched him during the process or made gratuitous or insulting comments. On the face of the complaint, the scope of the search was limited to a visual inspection as opposed to a cavity search. There is no indication the strip search lasted an inordinate amount of time. Accordingly, the allegations set forth in the complaint do not suggest his "severely limited" Fourth Amendment right to bodily privacy was violated. *Cf. Henry,* 969 F.3d at 779 (Fourth Amendment violation was found where female inmates were subjected to degrading strip search—including handcuffing, sexually derogatory name-calling, excessively long wait times, and unsanitary conditions related to female menstruation during the search—as part of a training exercise rather than a routine cell shakedown); *see also West v. Radtke*, 48 F.4th 836, 853 (7th Cir. 2022) ("It is well established that strip searches of inmates performed for security purposes are

reasonable as a general matter.").[4] Thus, he has not stated any claims with regard to the search.

As to the new cell where Mr. Dove was moved, the Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation, *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). In addition, "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gillis*, 468 F.3d at 493. On the subjective

---

[4] "Importantly, the Fourth and Eighth Amendments have different roles to play with respect to bodily searches and protect different categories of constitutional rights. The Eighth Amendment safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment." *Henry*, 969 F.3d at 781; *see also Chatman v. Gossett*, 766 Fed. Appx. 362, 364 (7th Cir. 2019) ("Strip searches of prisoners violate the Eighth Amendment if their purpose is 'maliciously motivated, unrelated to institutional security, and hence totally without penological justification.'") (quoting *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (internal quotation marks and citations omitted)). Mr. Dove does not allege that the shakedown or strip search were maliciously motivated, conducted to inflict wanton pain, or instituted as a form of punishment without penological justification. In fact, he states he was "next" in line for a strip search (ECF 36 at 3), which indicates there were other inmates who were also routinely searched that same day. Therefore, he has not stated any Eighth Amendment claims pertaining to the search either.

prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (citations and quotations omitted).

Here, the second amended complaint alleges the new cell was filthy and unsanitary, but the only supporting details provided are that there was "a lot of dust and dirt, debri[s] . . . dead roaches, dead mice plus mice poop that was scattered everywhere" and a hole with two dead mice in it. He admits he was able to plug the hole, wipe up the dead insects and droppings with a piece of wet sheet, and dispose of the dead mice using a tissue the day he arrived. Mr. Dove doesn't allege he was exposed to any living mice—indeed, he admits the dried-up mice appeared to have been dead a long time—and he describes only one instance when he felt a single roach crawling on his leg. *See Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (plaintiff's allegations that "[s]piders, rats, roaches, centerpides [sic], flys, gnats and beetles are on the tier[,] also there are nests of spiders under the radiators[,] roaches and gnats make their home in the showers and toilet area" did not rise to the level of a constitutional violation even though the Seventh Circuit acknowledged there was "no[] doubt that there are rodents and insects in the Cook County Jail"). Mr. Dove says he was denied a variety of cleaning supplies for two weeks, but the law has recognized Eighth Amendment violations "where prisoners are deprived of cleaning supplies and running water only in extreme circumstances." *Gray v. Hardy*,

826 F.3d 1000, 1005 (7th Cir. 2016) (collecting cases). The complaint doesn't allege he lacked running water, and the conditions described aren't otherwise extraordinarily unusual in that sense.

Mr. Dove further alleges he was denied his personal hygiene items and was provided with only a mattress, sheets, and the clothes on his back for seven days. The events he is suing about occurred in late April; and, while Mr. Dove claims he "couldn't get warm" on the night he arrived, he doesn't plausibly allege the conditions inside the cell were impermissibly cold overall. Moreover, considering he was only deprived of the items for a week, he hasn't stated a valid Eighth Amendment claim on those grounds. *See e.g. Gray*, 826 F.3d at 1005 (noting that "[a]n adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation *even if it would not be impermissible if it were only a short-term problem*") (emphasis added); *see also Harris v. Jones*, No. 20-1625, 2021 WL 4950248, 2 (7th Cir. Oct. 25, 2021) (collecting cases and finding a "brief delay in receiving hygiene items" did not violate the Eighth Amendment); *Harris v. Fleming*, 839 F.2d 1232, 1234–36 (7th Cir. 1988) (no constitutional violation where prison officials failed to provide prisoner with toilet paper for five days and with soap, toothbrush, and toothpaste for ten days). Mr. Dove also complains he was not allowed to shower for seven days, which he believes led to a rash, but even "restricting inmates to weekly showers does not violate the Eighth Amendment." *Conner v. Hoem*, 768 Fed. Appx. 560, 563–64 (7th Cir. 2019) (citing *Jaros v. Ill. Dep't of Corrs.*, 684 F.3d 667, 671 (7th Cir. 2012)).

Overall, despite being given several opportunities to make revisions and provide additional information, the facts presented in the second amended complaint regarding the condition of his new cell in the disciplinary segregation unit do not describe a degree of uncleanliness or lack of necessities needed to support a constitutional violation. *See e.g., Bissessur*, 581 F.3d at 602 (claim must have "facial plausibility" to survive dismissal); *see also Smith,* 803 F.3d at 312 (plaintiff's allegations regarding his dirty, pest infested cell did "not approach the severity of the conditions" necessary to support a constitutional violation on that basis). Therefore, Mr. Dove has not stated any claims with regard to the condition of his new cell.

Mr. Dove further alleges he was prevented from having his "[B]ible & daily bread devotion" and cross inside his new cell. Prisoners enjoy a right to exercise their religion under the Free Exercise Clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). Nevertheless, restrictions that limit the exercise of religion are permissible if they are reasonably related to legitimate penological objectives, which include safety, security, and economic concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *see also Gonzalez v. Litscher*, 79 Fed. Appx. 215, 217 (7th Cir. 2003) ("Although it is true that an inmate's right to freely exercise his religion does not stop entirely at the prison door, that right is not unfettered.") (citing *Tarpley v. Allen County, Ind.*, 312 F.3d 895, 898 (7th Cir. 2002).

Mr. Dove's claim is centered around his inability to have his Bible, cross, and written devotions in his new cell in the disciplinary segregation unit. Inmates in segregation are permissibly subjected to far more restrictive conditions than those in

9

general population, including being precluded from prison activities, religious services, contact visits, exercise privileges, and regulation of personal items they are allowed to have in their cell. *Lekas v. Briley*, 405 F.3d 602, 610-12 (7th Cir. 2005); *see also Payette v. Hoenisch*, 284 Fed. Appx. 348, 353 (7th Cir. 2008) (finding no constitutional violation when prison officials had removed *all* books—including the Bible—from inmate's cell because they believed the books to be a security concern). Importantly, though Mr. Dove alleges in a conclusory fashion that he wasn't able to "practice my religion" (ECF 36 at 8), he acknowledges that he was able to "pray" in his cell even without the Bible or devotional book (*id*. at 7) and doesn't provide any other details about the alleged deprivation. Accordingly, he hasn't stated a plausible First Amendment claim for relief.

Finally, Mr. Dove claims his legal materials from his original cell were taken and never returned. Prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference. *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process. *Id*. (citations omitted). Denial of access to the courts must be intentional; "simple negligence will not support a claim that an official has denied an individual of access to the courts." *Id*. at 291 n.11 (citing *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992)). To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions (by defendants acting under color of law) hindered the inmate's efforts

10

to pursue a non-frivolous legal claim, *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998), and that actual injury (or harm) resulted. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds* did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts); *see also* Pattern Civil Jury Instructions of the Seventh Circuit, 8.02 (rev. 2017). In other words, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*," and only if the defendants' conduct prejudices a potentially meritorious legal claim has the right been infringed. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Thus, to state a claim, a plaintiff must "spell out, in minimal detail" the connection between the denial of access to legal materials and the resulting prejudice to a potentially meritorious legal claim. *Id.*

Mr. Dove doesn't provide any details about the materials that were taken or why they would be necessary to file a potentially meritorious legal claim. It's clear he isn't being prevented from filing documents with the courts in general, as he has consistently done so in this case since its inception. As such, it can't be plausibly inferred that Mr. Dove has been denied access to the courts in violation of the First Amendment.

For these reasons, the court DISMISSES the second amended complaint pursuant to 28 U.S.C. § 1915A because it fails to state any claims upon which relief can be granted and DIRECTS the clerk to close this case.

SO ORDERED.

November 16, 2023                                        *s/ Damon R. Leichty*
                                                         Judge, United States District Court